HORKAN *v.* BENNING, administratrix.

1. Admissions made by an administrator after his appointment are admissible against the estate of his intestate.
2. The amount of damages or of mesne profits to be recovered is a question for the jury, and not for the court. It was, therefore, error to direct the jury to find a specified sum as mesne profits.

Argued May 22, — Decided June 8, 1900.

Complaint for land. Before Judge Sheffield. Colquitt superior court. September 25, 1899.

*I. A. Bush & Sons, Arnold & Arnold,* and *D. H. Pope & Son,* for plaintiff in error. *W. C. McCall,* contra.

SIMMONS, C. J.    An action of complaint for certain land in Colquitt county was brought by Mary A. Benning, as administratrix de bonis non of the estate of Seaborn Jones, against Horkan. The plaintiff put in evidence a grant from the State to Seaborn Jones, of Baldwin county, Georgia, and her letters of administration. Horkan defended, and put in evidence a deed, dated in 1873, from John I. Hall, as administrator of John Hall, to Guzzard; a deed from Guzzard to Henry Banks, dated in 1877; a deed from Henry Banks to James Banks, dated in 1890; and a deed from James Banks to Horkan, dated in 1892. Horkan was shown to be in possession, but there was no evidence as to the length of time he had been in possession. There was evidence that the value of the timber on the land for turpentine purposes had been, before Horkan began to cut it, from $300 to $400; and that it was still worth, for turpentine purposes, from $1.50 to $2.00 per acre. There appears in the record nothing to show the number of acres in the lot. Horkan claimed that the intestate of the plaintiff was not the grantee named in the grant from the State relied upon by the plaintiff, and he showed by uncontradicted evidence that there had been, at the time of the grant, two men of the name of Seaborn Jones residing in Baldwin county, Georgia. He showed that both these men subsequently moved to Muscogee county, where the intestate of the plaintiff resided up to the time of his death. The defendant also offered in evidence an application by the plaintiff to the ordinary of Muscogee county for leave to sell all

the wild lands owned by the estate of her intestate, and not in Muscogee county.   In this application were set out many and divers lots of land as the property of the estate, but among them did not appear the lot now in controversy.   The defendant also offered in evidence certified copies of tax returns, showing that from 1866 to the time of the trial the administratrix of the intestate had never returned the lot for taxes, but that such lot had been returned and the taxes on it paid by the defendant and those under whom he claimed.   This evidence, the application and the certified copies of returns, was, on motion of plaintiff's counsel, rejected.   The court thereupon directed a verdict for the plaintiff for the land and for $300 as mesne profits.   The defendant made a motion for a new trial, in which he complained of the exclusion of the evidence mentioned above, and of the direction of the verdict.   This motion was overruled by the court, and the movant excepted.

1. The application to the ordinary, purporting to set out all the wild lands belonging to the estate of the intestate, setting out many such lands and omitting this particular lot, was in the nature of an admission, and should have been received by the court.   It is well settled by decisions of this court that admissions by an administrator or executor, made after he has been clothed with the trust, are admissible against the estate he represents.   *Sample* v. *Lipscomb*, 18 *Ga.* 687; *Lawson* v. *Powell*, 31 *Ga.* 681; *Floyd* v. *Wallace*, 31 *Ga.* 688 (4).   The court therefore erred in excluding the application.   For the same reason it was error to exclude the certified copies of tax returns. We hold now simply that this evidence was admissible.   What probative force it should have with the jury we are unable to say, and on that matter desire to express no opinion.

2. The present suit was brought for the land and also for mesne profits.   In an action of ejectment, mesne profits are given to a successful plaintiff as compensation in the nature of rent for the period, within the statute of limitations, for which the land has been illegally held by the defendant.   What was the rental value of the land involved in the present case should have been determined by the jury.   The evidence as to the rental value of the land was merely advisory, and the jury had the right to fix their own valuation.   Further than this, the evi-

dence did not point to any fixed or specific amount. It was, therefore, error for the court to direct the jury to find a verdict for $300 for mesne profits. Under the evidence and in the nature of the question, the determination of the amount of mesne profits should have been left with the jury.

*Judgment reversed. All concurring, except Fish, J., absent.*