52575. SPITZER v. SELIG ENTERPRISES, INC.

MARSHALL, Judge.

Appellant-lessee, Spitzer brings this appeal from a bench trial verdict and monetary judgment in favor of appellee-lessor Selig Enterprises, Inc. Spitzer enumerates six errors based primarily on the findings of fact and conclusions of law entered in this case by the trial court.

The evidence before the trial court reasonably established the following transactions between the parties. In September, 1972, Spitzer entered into a lease

contract with Selig Enterprises for the rental of business premises for a period of one year with a right of renewal for a period of two additional years. Spitzer made monthly payments of rent from September of 1972 until August, 1973, apparently missing one month in January, 1973. In any event Spitzer made 11 rental payments, making no more payments after the August, 1973, payment. Prior to default in rental payments, Spitzer exercised the renewal option extending the lease until September, 1975.

One of the provisions of the lease authorized the landlord, as tenant's agent, and without terminating the lease, upon breach of the lease by failure to make the stipulated rental payments, to enter upon and rent the premises. In that event the tenant was liable for any deficiency between the tenant's rent and the amount obtained by the landlord on reletting.

After Spitzer had missed three monthly rental installments, Selig Enterprises notified Spitzer in November, 1973, that it, as landlord, intended to collect the back rent, enter upon the premises and rent it as provided in the lease contract, and to enforce its right, also granted by the lease, to collect 10% attorney fees if payment was not forthcoming.

At about the same time, an agent for Selig Enterprises inspected the rental property and noted that though there were items of personalty of questionable value scattered around the store, the premises appeared to be abandoned. After the letter of notification, Spitzer did not contact Selig Enterprises as to Spitzer's intentions concerning the property.

Selig Enterprises negotiated a new lease with another lessee who formally took possession of the premises on April 1, 1974. The rental obtained from the new lessee exceeded the rental paid by Spitzer. When the new lessee took steps either in January or March, 1974, to take possession of the premises, he changed the locks on the doors. At the same time the new tenant loaded all the personalty found lying loose on the floor onto a truck and disposed of it at a local dump. The new tenant characterized this personalty as "junk."

Spitzer introduced testimony that he was in the process of moving his property from the rental property to

a second store occupied by himself. One evening in January, according to Spitzer, he found the locks changed and therefore was unable to complete the move of the remainder of his property. Ultimately when he was able to talk to the new tenant, he determined that the personalty had all been destroyed.

Selig Enterprises sued Spitzer for the lost rental from August, 1973, until the property was relet on April 1, 1974, an amount of $2,600, plus 10% attorney fees in the amount of $260. Spitzer counterclaimed for the conversion of his personalty in an amount of $4,500, plus $2,500 punitive damages. The trial court found in favor of Selig Enterprises in the amount of its prayers.

In its findings of fact, the trial court found that Spitzer had left his personal property on the rented premises from November, 1973, until it was removed by the new tenant in March, 1974. The court found that the new tenant changed the locks upon the premises and dumped the personalty, believing it to be junk, upon his own authority without direction or permission either of the landlord or Spitzer. *Held:*

1. In Enumerations 1 through 4 Spitzer complains the trial court erred in failing to find from the evidence that Selig Enterprises directed or authorized the new tenant to replace the locks on the rental property and to dispose of the property left on the premises. Spitzer avers that the acts of changing the locks and reletting to the new tenant amounted to his ouster from the property, denied him access to his property and therefore in law amounted to a conversion of his personalty by Selig Enterprises. This failure to find a conversion comprises the heart of these four enumerations.

While there was some conflict in the evidence, the findings of the trial court that Selig Enterprises did not direct the change of locks or disposition of the personalty are amply supported by the evidence. Our responsibility on appeal is not to weigh the evidence and give a de novo opinion on where the greater weight of the evidence lies but merely to determine if there is sufficient evidence to authorize the trial court's judgment. *Hallford v. Banks,* 236 Ga. 472 (224 SE2d 35). That standard is met in this case. *Ridley v. State,* 236 Ga. 147 (223 SE2d 131); *Proctor*

*v. State,* 235 Ga. 720, 721 (221 SE2d 556). These enumerations are without merit.

2. In his fifth enumeration of error, Spitzer alleges that the trial court erred in finding that Selig Enterprises' act of dispossession was not governed by the provisions of Chapter 61-3 of the Georgia Code. In pertinent part that Chapter of the Code provides that when a tenant holds over or fails to pay rent and the owner desires possession, the owner may make demand upon the tenant. Where the tenant refuses possession, the owner may go before an appropriate court and, following legal processes, obtain a writ of possession and verdict and judgment for all rents due. It is Spitzer's contention that a landlord must use the processes of court to dispossess and may not appropriate or destroy a tenant's personalty or deliver it over to third parties for wasting or for the third parties' own use. *Maslia v. Hall,* 121 Ga. App. 740 (175 SE2d 48).

Under the factual situation of this case, Chapter 61-3 has no application. The title of that chapter is "Proceedings Against Tenants Holding Over." The chapter obviously concerns itself with those tenants who refuse to relinquish possession of property after their right of possession has expired either by termination of lease or by failure to pay rental. In this case the landlord by contract had the right to go upon the property and relet it upon the breach of the lease by failure to make rental payments. Notice was given to the tenant that this right was going to be exercised. Spitzer admitted receiving this notice. The physical evidence indicated and the trial court found that Spitzer had already relinquished control of the property, therefore no demand to vacate was necessary. See *Entelman v. Hagood,* 95 Ga. 390, 392 (22 SE 545). Selig Enterprises sued in a common law action for damages based upon a breach of contract, a remedy it was entitled to pursue. *McMillan v. Rodgers,* 32 Ga. App. 647 (1) (124 SE 354). The trial court did not err in concluding that Chapter 61-3 of the Georgia Code did not apply in this case.

3. In his sixth and final enumeration of error, Spitzer contends that the trial court applied the wrong measure of damages. Spitzer admitted at trial that he had not paid rental from September, 1973 until the premises

were relet on April 1, 1974. However, he argues that the lease required that the lessee pay only the difference between the rental collected from the subsequent lessee and the greater amount called for under the original lease. Since the rent collected from the new tenant exceeded any loss of rental, Spitzer contends nothing is due under the contract. Spitzer's contention is correct as an abstract principle of law. However, Selig Enterprises was not suing for the difference in rentals (there being no loss) but sued for the payments not paid by Spitzer during the period of default and prior to the reletting of the property. Selig Enterprises was entitled to sue for this loss. *Dehco, Inc. v. Greenberg,* 105 Ga. App. 236, 238 (124 SE2d 311). The money verdict was consistent with the amount of lost rent. The trial court did not err in applying the measure of damages as one of missed payments.

*Judgment affirmed. McMurray and Smith, JJ., concur.*

ARGUED SEPTEMBER 7, 1976 — DECIDED OCTOBER 6, 1976 — REHEARING DENIED OCTOBER 25, 1976 —

*William R. Parker,* for appellant.
*Fine & Block, Rollin E. Mallernee, II,* for appellee.